UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:21-cv-01261-VMC-JSS

AIN JEEM, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER comes before the Court on Plaintiff's Motion for Entry of Preliminary Injunction ("Motion") (Dkt. 19). The Motion was referred to the undersigned for a report and recommendation. (Dkt. 20.) Plaintiff, Ain Jeem, Inc. ("Ain Jeem") moves for a preliminary injunction against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" (collectively "Defendants"), and an order restraining financial accounts used by Defendants under 15 U.S.C. § 1116, 17 U.S.C. § 502, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a) (Dkt. 19).

The undersigned conducted a hearing on the Motion on July 12, 2021, at which only counsel for Plaintiff was present and available to present evidence supporting the Motion. Because Plaintiff has satisfied the requirement for the issuance of a

preliminary injunction, it is recommended that the Court grant Plaintiff's Motion for Preliminary Injunction as to all remaining Defendants.

## BACKGROUND[1]

Plaintiff is the owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office:

| Trademark | Registration Number | Registration Date | First Use Date | Classes / Goods |
|---|---|---|---|---|
| Kareem Abdul-Jabbar | 2,074,575 | 06/24/1997 | 01/25/1990 | IC 025: athletic and athletically inspired clothing in the nature of T-shirts, and socks |

Plaintiff is also the owner of the following logo:

**KAR33M**

(the "KAR33M Logo") (collectively the "Kareem Abdul-Jabbar Marks"). *See* Declaration of Deborah Morales in Support of Plaintiff's Motion for TRO ("Morales Decl.") at ¶ 4; *see also* United States Trademark Registration for the Kareem Abdul-Jabbar Standard Character Mark at issue attached as Exhibit 1 to the Complaint. The Kareem Abdul-Jabbar Marks are used in connection with the design, marketing, and distribution of high-quality goods in the category identified above. *See id.*

---

[1] The factual background is taken from the Plaintiff's Complaint (Dkt. 1), Motion (Dkt. 19), and supporting Declarations submitted by the Plaintiff.

The Defendants, through the various Internet based e-commerce stores operating under the seller identities and domain names identified on Schedule "A" to the Complaint (the "Seller IDs and Subject Domain Names"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Kareem Abdul-Jabbar Marks. *See* Morales Decl. at ¶¶ 17-20; Declaration of Richard Guerra in Support of Plaintiff's Motion for TRO ("Guerra Decl.") at ¶ 5.

Although each of the Defendants may not copy and infringe each of the Kareem Abdul-Jabbar Marks for each category of goods protected, the Plaintiff has submitted sufficient evidence showing each of the Defendants has infringed at least one of the Kareem Abdul-Jabbar Marks. *See* Guerra Decl. at ¶ 4, Schedule C. The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Kareem Abdul-Jabbar Marks. *See* Morales Decl. at ¶ 17.

The Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded and protected products by the Defendants. *See* Morales Decl. at ¶¶ 17-20. Plaintiff accessed each of the e-commerce stores operating under the Defendants' Seller IDs and Subject Domain Names, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of the Kareem Abdul-Jabbar Marks at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. *See id.; see also* Guerra Decl. at ¶ 5. The Plaintiff conducted a review and visually inspected the Kareem

3

Abdul-Jabbar branded items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs and Subject Domain Names and determined the products were nongenuine, unauthorized versions of the Plaintiff's products. *See id.*

## APPLICABLE STANDARDS

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## CONCLUSIONS OF LAW

The declarations the Plaintiff submitted in support of its Motion for Preliminary Injunction support the following conclusions of law:

A. The Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Kareem Abdul-Jabbar Marks, and that (2) the products Defendants are selling and promoting for sale are copies of the Plaintiff's products which bear copies of the Kareem Abdul-Jabbar Marks.

B. Because of the infringement of the Kareem Abdul-Jabbar Marks, the Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining

order is not granted. The following specific facts, as set forth in the Plaintiff's Complaint, Motion, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers in view of the following considerations:

      1.    The Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of the Plaintiff's rights;

      2.    There is good cause to believe that more counterfeit and infringing products bearing the Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that the Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates; and

      C.    The balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to the Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

      D.    The public interest favors issuance of the temporary restraining order to protect the Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

      E.    Under 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and

sales of goods bearing counterfeits and infringements of the Kareem Abdul-Jabbar Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

  F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

  G. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal trademark laws, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## RECOMMENDATION

Upon review of the Plaintiff's Complaint, Motion, and supporting evidentiary submissions it is **RECOMMENDED** that the Plaintiff's Motion for Preliminary Injunction) is **GRANTED**, under the terms set forth below:

  (1) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are restrained and enjoined until further order from this Court as follows:

        a.      From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Kareem Abdul-Jabbar Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff;

        b.      From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Kareem Abdul-Jabbar Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Kareem Abdul-Jabbar Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants; and

        c.      From using any reproduction, counterfeit, copy, or colorable imitation of the Kareem Abdul-Jabbar Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

(2)    Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Kareem Abdul-Jabbar Marks, or confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated, or

controlled by them, including the Internet based e-commerce stores operating under the Seller IDs and Subject Domain Names.

(3)     Each of the Defendants shall not transfer ownership of the Seller IDs and Subject Domain Names during the pendency of this action, or until further Order of the Court.

(4)     The domain name registrars for the Subject Domain Names are directed to transfer to the Plaintiff's counsel, for deposit with this Court, domain name certificates for the Subject Domain Names.

(5)     Upon the Plaintiff's request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information are ordered to disclose to the Plaintiff the true identities and contact information of those registrants.

(6)     Upon entry of this Order, the Plaintiff shall provide a copy of the Order by email to the registrar of record for each of the Subject Domain Names. Upon receipt of the Order, the registrar of record for each of the Subject Domain Names shall immediately lock each of the Subject Domain Names; shall notify each registrant of record of the Order; and shall provide notice of the locking of the domain name to the registrant of record. After providing such notice to the registrars so the domain names may be locked, the Plaintiff shall also provide notice and a copy of this Order to the registrant for each Subject Domain Name via email to the email address provided as part of the domain registration data for each of the Subject Domain Names identified in the Application for Temporary Restraining Order. If an email address was not

provided as part of the domain registration data for a Subject Domain Name, the Plaintiff shall provide notice and a copy of this Order to the operators of the Internet websites via an onsite email address or online submission form provided on the Internet websites operating under such Subject Domain Names. Forty-eight (48) hours after emailing this Order to the registrars of record and the registrants, the Plaintiff shall provide a copy of this Order to the registrars and the registries for the Subject Domain Names for the purposes described in Paragraph 7, below.

(7)   The domain name registrars for the Subject Domain Names shall immediately assist in changing the registrar of record for the Subject Domain Names, to a holding account with a registrar of the Plaintiff's choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by the Plaintiff have been or will be dismissed from this action, or as to which the Plaintiff has withdrawn its request to immediately transfer such domain names. To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one (1) business day of receipt of this Order, the toplevel domain (TLD) registries for the Subject Domain Names or their administrators, including backend registry operators or administrators, within five (5) business days of receipt of this Order shall change, or assist in changing, the registrar of record for the Subject Domain Names to a holding account with the New Registrar, excepting any such domain names which such registries have been notified in writing by the Plaintiff have been or will be dismissed from this action or as to which the Plaintiff has withdrawn its request to immediately transfer such domain names. Upon

the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") [https://www.dropbox.com/sh/qf7qle4sdoiv6di/AAAwxaCEFCX1Vua_rn-bvpIfa?dl=0](https://www.dropbox.com/sh/qf7qle4sdoiv6di/AAAwxaCEFCX1Vua_rn-bvpIfa?dl=0) whereon copies of the Complaint, this Order, and all other documents on file in this action shall be displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action shall be displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on lock status, preventing the modification or deletion of the domains by the New Registrar or Defendants.

(8)     Each Defendant shall preserve copies of all computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order.

(9)     Upon receipt of notice of this Order, the Defendants and any third-party financial institutions, payment processors, banks, escrow services, money transmitters,

or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third-Party Providers"), shall after receipt of notice of this Order, restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained.  No funds restrained by this Order shall be transferred or surrendered by any Third-Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

(10)    Any Defendant or Third-Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(11)    This Order shall apply to the Seller IDs and Subject Domain Names, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Kareem Abdul-Jabbar Marks at issue in this action and/or unfairly competing with Plaintiff.

(12) This Order shall remain in effect during the pendency of this action, or until such further dates as set by the Court or stipulated to by the parties.

(13) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiff shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.

(14) The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Virginia M. Covington, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**IT IS SO REPORTED** in Tampa, Florida, on September 1, 2021.

                                                          _____
                                                          JULIE S. SNEED
                                                          UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Virginia M. Hernandez Covington
Counsel of Record